DECISION
{¶ 1} Relator, John Belivanakis, has filed an original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting him compensation.
 {¶ 2} This court referred this matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. On January 22, 2003, the magistrate rendered a decision including findings of facts and conclusions of law. (Attached as Appendix A.) The magistrate concluded the commission correctly exercised its discretion in relying upon the opinion of William R. Fitz, M.D., when the commission issued an order denying the PTD application. Therefore, the magistrate recommended denying relator's request for a writ of mandamus. Relator has filed no objections.
 {¶ 3} On April 17, 2002, this court entered judgment and granted relator's prior request for a writ of mandamus on the grounds the commission failed to properly consider the issue of whether relator could return to his former position of employment. State ex rel. Belivanakis v. Indus. Comm. (Apr. 16, 2002), Franklin App. No. 01AP-718. In this action, relator argues this court's writ of mandamus ordered the commission to exclude consideration of Dr. Fitz's report. Relator further argues the commission violated the writ of mandamus in denial of his application for PTD by relying on Dr. Fitz's opinion that the relator is permitted to return to "light to moderate" work. We disagree.
 {¶ 4} The commission did not abuse its discretion in denying PTD based, in part, on Dr. Fitz's conclusion relator was capable of sustained remunerative employment while the commission rejected Dr. Fitz's conclusion relator could return to his former position of employment. State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 141.
 {¶ 5} Upon review, we find no irregularity with the magistrate's development of the factual background, and we find the magistrate's decision is in accordance with law. Accordingly, we adopt the magistrate's decision as our own. Therefore, the requested writ of mandamus is denied.
Writ denied.
BROWN and LAZARUS, JJ., concur.
 APPENDIX A IN MANDAMUS {¶ 6} In this original action, relator, John Belivanakis, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting him said compensation.
 Findings of Fact: {¶ 7} 1. Relator has two industrial claims arising from his employment as an industrial painter and sandblaster for respondent Orion Painting Contracting. On October 8, 1993, relator felt severe pain in the area of his right elbow as he was rolling paint with a 12 foot extension. On that same date, relator also injured his low back when he was lifting an air compressor from a truck. The October 8, 1993 injuries are allowed for: "right elbow strain; lumbosacral sprain/strain" and are assigned claim No. 93-29237.
 {¶ 8} 2. Relator's second industrial claim is allowed for: "bilateral sensorineural hearing loss" and is assigned claim No. 94-582130. The commission lists the date of injury on this claim as June 13, 1994.
 {¶ 9} 3. On August 10, 2000, relator filed an application for PTD compensation. Relator describes his job as that of an "industrial painter." He indicates that the job duties involve sandblasting and spray painting of water towers and bridges. Spray painting equipment and an air compressor were some of the equipment he used.
 {¶ 10} 4. On November 16, 2000, relator was examined by commission specialist David M. Morad, Jr., M.D., who is a board certified otolaryngologist. Dr. Morad wrote:
 {¶ 11} "* * * Can the claimant perform any of his/her former positions of employment? Regarding hearing loss and tinnitus, the answer is yes.
 {¶ 12} "* * * Can the claimant perform any sustained remunerative work activity? Regarding the allowed conditions I examined this gentleman for, the answer is yes."
 {¶ 13} 5. On November 20, 2000, relator was examined on behalf of the commission by William R. Fitz, M.D., whose specialty is physical medicine and rehabilitation. Dr. Fitz wrote:
 {¶ 14} "* * * Can the claimant perform any of his or her former positions of employment? Yes, I believe he could perform painting activities.
 {¶ 15} "* * * Can the claimant perform any sustained remunerative work activity? Yes, I believe he could return to a light to moderate work activity."
 {¶ 16} 6. Dr. Fitz also completed an occupational activity assessment form dated November 20, 2000. The form asks the examining doctor to indicate by checkmark the claimant's capability in each of several occupational activities. Dr. Fitz indicated that relator's capability to lift or carry up to ten pounds is "unrestricted." Relator can lift or carry from ten to 20 pounds from "5-8 HRS" during a work day. Relator can only lift or carry from 20 to 50 pounds from "0-3 HRS" during a work day.
 {¶ 17} 7. The commission requested an employability assessment report from Robert A. Mosley, a vocational expert. The Mosley report, dated January 22, 2001, provides the following work history:
 Job Title * * * Skill level Strength level Dates
 Painter/ * * * semi-skilled heavy 1976-1992"
Construction Worker I
 {¶ 18} 8. Following a March 2, 2001 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. Citing the reports of Drs. Fitz and Morad, the SHO found that neither the orthopedic or hearing conditions prevent relator from returning to his former position of employment.
 {¶ 19} 9. On June 25, 2001, relator filed in this court a mandamus action. On December 27, 2001, the magistrate issued a decision that this court issue a writ of mandamus. The magistrate's decision states in part:
 {¶ 20} "Given Dr. Fitz's Occupational Activity Assessment report indicating that relator can lift or carry from twenty to fifty pounds from '0-3 HRS,' it is clear that relator cannot perform `heavy work.' This is consistent with Dr. Fitz's narrative report which states that relator could return to `light to moderate work activity.' Presumably, Dr. Fitz meant to say that relator could return to light to medium work activity.
 {¶ 21} "The commission's employability assessor, Mr. Mosley, described the job in which relator was injured as `Painter-Construction Worker I' under the Dictionary of Occupational Titles (`DOT'). Mr. Mosley also indicated that the job, i.e., the former position of employment, is rated by the DOT at the heavy strength level.
 {¶ 22} "Obviously, there is a conflict between Mr. Mosley's assessment of a heavy strength level for the former position of employment and Dr. Fitz's opinion that relator can return to the former position of employment absent an ability to perform heavy work.
 {¶ 23} "In the view of the magistrate, Mosley's assessment of the former position of employment at the heavy strength level, at a minimum, raised an issue for the commission as to whether Dr. Fitz correctly understood the physical demands of the former position of employment.
 {¶ 24} "The commission never reached the nonmedical issue and, thus, declined to evaluate the Mos[ley] report. Certainly, the commission is not required to accept even the report of its own vocational expert. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271; State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 141.
 {¶ 25} "Nevertheless, the commission failed to address a critical issue when it decided to accept Dr. Fitz's opinion on the ability to return to the former position of employment. See State ex rel. General American Transp. Corp. v. Indus. Comm. (1990), 49 Ohio St.3d 91, 92. Had the commission considered Dr. Fitz's opinion in light of Mr. Mosley's rating of the former position of employment at the heavy strength level, it might have been persuaded to reject Dr. Fitz's opinion that relator can return to the former position of employment but accept his opinion that relator can perform `light to moderate [medium] work activity.' In that event, the commission would have been required to consider the nonmedical factors.
 {¶ 26} "* * *
 {¶ 27} "Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's PTD application, and in the manner consistent with this magistrate's decision, enter a new order either granting or denying the PTD application." (Emphasis sic.)
 {¶ 28} 10. On April 16, 2002, this court issued a memorandum decision, State ex rel. Belivanakis v. Indus. Comm. (Apr. 16, 2002), Franklin App. No. 01AP-718, stating:
 {¶ 29} "* * * The magistrate concluded that respondent-commission had failed to address a critical issue with respect to its finding that relator could return to his former position of employment, and that this court should issue a writ of mandamus.
 {¶ 30} "* * *
 {¶ 31} "Finding no error or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, we issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's application for permanent total disability compensation, and to enter a new order either granting or denying said application consistent with the decision of the magistrate and with this memorandum decision."
 {¶ 32} 11. On April 17, 2002, this court entered judgment, stating:
 {¶ 33} "For the reasons stated in the memorandum decision of this court rendered herein on April 16, 2002, the decision of the magistrate is approved and adopted by the court as its own, and it is the judgment and order of this court that a writ of mandamus issue against respondent Industrial Commission of Ohio to vacate its order denying relator's application for permanent total disability compensation, and to enter a new order either granting or denying said application consistent with the decision of the magistrate and with this memorandum decision. * * *"
 {¶ 34} 12. On April 30, 2002, the commission issued an order acknowledging this court's writ of mandamus and referring the matter to the commission's hearing administrator for review and the scheduling of a hearing on the PTD application.
 {¶ 35} 13. Following a June 22, 2002 hearing, an SHO issued an order denying the PTD application. The SHO relied upon the reports of Drs. Fitz and Morad and the Mosley vocational report. The SHO relied upon Dr. Fitz's opinion that relator could return to light to moderate work activity. The SHO also found that relator would be unable to perform the duties of the former position of employment considering the limitations in Dr. Fitz's reports. The SHO then engaged in an extensive discussion of the Mosley vocational report, concluding that the non-medical factors permitted sustained remunerative employment.
 {¶ 36} 14. On July 29, 2002, relator, John Belivanakis, filed this mandamus action.
 Conclusions of Law: {¶ 37} Relator seems to be arguing: (1) that this court's writ of mandamus ordered the commission to eliminate Dr. Fitz's report from further evidentiary consideration; and (2) that the commission violated this court's writ of mandamus by relying upon Dr. Fitz's opinion that the industrial injury permits relator to "return to a light to moderate work activity."
 {¶ 38} The magistrate finds: (1) this court's writ of mandamus did not order the commission to eliminate Dr. Fitz's report from further evidentiary consideration; and (2) the commission did not violate this court's writ of mandamus by relying upon Dr. Fitz's opinion. Accordingly, as more fully explained below, this court must deny relator's request for a writ of mandamus.
 {¶ 39} In the prior mandamus action, the magistrate's decision states that:
 {¶ 40} "* * * [T]he commission failed to address a critical issue when it decided to accept Dr. Fitz's opinion on the ability to return to the former position of employment. * * * Had the commission considered Dr. Fitz's opinion in light of Mr. Mosley's rating of the former position of employment at the heavy strength level, it might have been persuaded to reject Dr. Fitz's opinion that relator can return to the former position of employment but accept his opinion that relator can perform `light to moderate [medium] work activity.' * * *"
 {¶ 41} On remand, the commission followed the magistrate's decision which this court had adopted. The SHO's order of June 21, 2002 clearly indicates that Dr. Fitz's opinion as to the ability to return to the former position of employment was rejected while his opinion that relator can perform light to moderate work activity was accepted.
 {¶ 42} It was within the commission's fact-finding discretion to reject one of Dr. Fitz's opinions while accepting the other. Moreover, the exercise of this discretion was well within the parameters of this court's writ of mandamus.
 {¶ 43} Accordingly, for all the above reasons, it is this magistrate's decision that this court deny relator's request for a writ of mandamus.